## WALLACE *vs.* DREW and others.

It is well settled that every person through whose land a stream of water flows may construct embankments and other guards on the bank, to prevent the stream washing the bank away and overflowing and injuring his land. But in doing this, he must be careful so to construct them as not to throw the water upon his neighbor's lands, where it would not otherwise go, in ordinary floods; otherwise he will be liable for the injury. But this rule does not apply to floods altogether extraordinary and unusual.

Where it appeared that, although certain banks and erections made by the defendants, on their own premises, to guard the bank and prevent the waters of a stream from injuring such premises, had caused the waters of the creek to flow in a new direction upon the plaintiff's lands, where they did not belong, and were not accustomed to flow, and where they would not have gone, but for those guards and erections; yet, as all the water which flowed upon the plaintiff's premises, on the occasion of the injury complained of, did not come from the branch of the creek which flowed through the defendants' lands, or by means of their guards and erections; but that an obstruction placed by one M. in the channel of another branch of the same stream, which stream divided above the defendants' premises, had caused the waters of that branch, as well as those of the defendants' branch, to flow, at the same time, in about equal proportions, upon the plaintiff's land, and both streams had contributed to the injury complained of; *it was held* that it would be manifestly unjust to make the defendants respond for the portion of the injury and damage occasioned by the wrongful act of M., who was in no way connected with them, in act or interest, and whose obstruction was wholly upon his own land, and upon another stream.

APPEAL from a judgment entered upon the report of a referee.

The action was brought to recover damages for, and to restrain, the obstruction of a water course running through the lands of the defendant Nancy Drew.

On the trial before the referee, when the plaintiff rested, the defendant Clark Drew, moved for a dismissal of the complaint as against him, on the following grounds: 1st. That the plaintiff has failed to prove a cause of action against the defendant Clark Drew. 2d. That the evidence shows that the defendant Clark Drew. had no proprietary interest whatever in the premises in question, or in the nuisance, or any jurisdiction over it, and an

action in equity to abate the nuisance, or to enjoin the discontinuance thereof, must be brought against the owner of the nuisance, or some person who for the time being has an exclusive proprietary interest in, or jurisdiction of it, and therefore no cause of action exists herein against him.

The court denied the motion; to which ruling and decision the counsel for the defendant Clark Drew duly excepted.

The defendant John Drew then moved for a dismissal of the complaint as against him, on the following grounds : 1st. That the plaintiff has failed to prove a cause of action against the defendant John Drew. 2d. That the defendant John Drew, having no proprietary interest whatever in the premises in question, or in the nuisance in question, and no jurisdiction or control of said nuisance, no cause of action exists against him for continuing the same, or for damages occurring from its erection. The court denied the motion; to which ruling and decision the counsel for the defendant John Drew duly excepted.

The defendant Nancy Drew then moved for a dismissal of the complaint as against her, on the following grounds : 1st. The plaintiff has failed to prove a cause of action against the defendant Nancy Drew. 2d. That the defendant Nancy Drew, not having participated in the erection or continuance of said nuisance, and being a married woman, the defendant John Drew, being her husband, no authority to erect or continue said nuisance is implied by reason of her interest in the premises or the nuisance in question, and no cause of action exists against her herein, either jointly or severally. The court denied said motion; to which ruling and decision the counsel for the defendant Nancy Drew duly excepted.

The referee found the following facts :

1st. That at and for twenty years prior to the time of the commencement of this action, the plaintiff was the owner and in the possession of a farm of about seventy

Wallace v. Drew.

acres, situated on lot No. 21, in the town of Albion, Catta-
raugus county, New York, and lying on both sides of a
highway leading from Cattaraugus station to Little Valley,
upon which farm the plaintiff has valuable farm buildings,
an orchard and other improvements.

2d. That during the same time, the defendant Nancy
Drew has been the owner of a valuable farm situate on
lot No. 20, in said town, and lying upon both sides of the
same highway, and the defendant John Drew is the hus-
band of the defendant Nancy Drew, and the defendant
Clark Drew is the son of John and Nancy, and the said
John Drew, Nancy Drew and Clark Drew, have been in
the occupancy of the premises last described for six years
prior to the commencement of this action.

3d. That there has been for more than twenty years
prior to the commencement of this action, a natural stream
of water, flowing from the east towards the west, upon the
farm of said Nancy Drew, and from the point where the
said stream enters upon the farm of Nancy Drew to the
point where it empties into a brook which runs nearly
north and south, and is west of the Little Valley road, the
natural channel of said stream is entirely upon the said
farm. That said stream is not constant, but at times is,
and has been for many years, violent.

4th. That the defendants, prior to the commencement
of this action, built and caused to be built, and kept up
and have caused to be kept up, upon the south bank of
the stream, commencing near the point where the stream
enters upon the farm of said Nancy Drew, and extending
for several rods down the stream, an embankment of
boards, timber, logs, brush and gravel, which embank-
ment was begun on the south bank of the natural channel
of said stream for the purpose of protecting said south
bank, but which the defendants wrongfully extended into
the natural channel of said stream; and that by reason
thereof the waters of said stream were wrongfully ob-

structed, and caused to flow unnaturally against and over the north bank of said stream, and the natural channel of said stream filled up by such wrongful obstructions.

5th. That afterwards, and before the commencement of this action, the defendants, for the purpose of preventing the waters of said stream from flowing across the lands of said Nancy Drew to the brook west of the Little Valley road, as they would naturally flow, built and caused to be built, a tight board fence upon their said farm, along the Little Valley road, and by means thereof wrongfully obstructed the waters of said stream, and diverted them from their natural course to their outlet in the large brook west of the Little Valley road.

6th. That by reason of said obstructions, so wrongfully erected, and kept up and maintained by the defendants, the waters of said stream were diverted from their natural course and channel, and in the summer of 1869, prior to the commencement of this action, flowed violently down and along the Little Valley road, upon and across the farm of the plaintiff, washing out a wide deep channel in the highway, in front of the plaintiff's farm, and between the portions of his farm lying upon opposite sides of the said highway, and entered upon the inclosed lands of the plaintiff, and injured and destroyed his crops there growing, and undermined and uprooted his trees, and washed away the land and soil of the plaintiff, and that by reason thereof the plaintiff sustained damages to the amount of $500.

7th. That so long as the said obstructions remain and are kept up by the defendants, the plaintiff's lands are in danger of being overflown, and his buildings being undermined, and his crops being destroyed.

The referee found as conclusions of law :

1. That the plaintiff was entitled to recover of the defendants the sum of $500, and one year's interest thereon, $35, in all $535, for the damages sustained by him by rea-

Wallace *v.* Drew.

son and on account of the wrongful acts committed by the defendants.

2. That the plaintiff was entitled to the judgment of this court, enjoining the defendants, and each of them, and all persons claiming under them, or either of them, from stopping or obstructing, or continuing to stop and obstruct the free passage of the water in the brook crossing the lands of the defendant Nancy Drew, from east to west, in their natural course and channel.

He accordingly ordered judgment for the plaintiff against the defendants, with costs to be taxed. From the judgment so entered, the defendants appealed.

*Carey & Jewell,* for the appellants.

I. It is insisted that there is no evidence which renders the defendants liable. 1. The findings of the referee are based upon the theory that the erection of the fence and embankment along the south bank of the stream, and of the board fence west of the Little Valley road, caused the water to overflow the north bank, and thence down the road to the plaintiff's land, and hence the defendants are liable. This theory is not sound, for the following reasons : 1. There is no evidence showing that either of said erections were within the original channel of the stream, but on the contrary, it clearly appears that they were outside such channel, and in locations where the defendants had an undoubted right to erect them. 2. The defendants had a clear right to construct the fence west of the Little Valley road, entirely away, as it is, from the channel of the creek; yet it is conceded that the water from this stream would not have passed down the road to the plaintiff's land but for this fence. The defendant may legally erect any work to prevent his lands being overflowed by any change in the natural state of the river, and to prevent the old course from being altered. (*Angell on Water Courses,* § 333.) So to sustain the referee, it must be held that the

defendant must permit the encroachments of this stream to ravage her farm, without attempting to stay its random course, because, forsooth, it may flow on to the premises of the plaintiff. 3. It appears as an undisputed fact, that Milk erected a tight board fence across the channel of the north branch, at the crossing of the Little Valley road, between the plaintiff's land and the stream in question, and that but for such erection the water flowing down said Little Valley road would have passed into the channel of said north branch, and so down to the main creek west, and would not have reached the plaintiff's lands.. And yet the referee comes to the extraordinary conclusion that we are responsible, because we built a fence on our own land against which the overflowing water ran, and that without any pretense that by so doing we obstructed the water in any legitimate channel. 4. There is no evidence that the defendants ever interfered with the original channel of this stream, or made erections which changed the channel. It does appear that the bed of the stream was filled up with gravel at certain points, about two years before suit, and that when the channel was so filled up, the water ran off both ways, but mainly to the north. The deposit of gravel now is not different from what it was before the embankment was built. After the fence was built along the south bank, the bank was washed out south of the fence, leaving it in the stream. There is no evidence showing that the fence caused the stream to overflow, but on the contrary, it is apparent that the filling up of the channel by natural causes was the direct cause of such overflows. The bed of the stream was filled up by sudden freshets, and none of the acts of the defendants contributed to that result. The fence on the south bank was erected at a low place outside the channel, and had the effect of preventing the water from flowing over the bank at that point towards the defendants' house. There is no evidence produced on the part of the plaintiff, show-

ing the location of the original channel. The witnesses speak of a log or tree, ploughing, &c., in the stream, but it does not appear that any such operations were located in the old channel. The conclusion reached by the referee, in the face of the above undisputed facts, is clearly error. 5. The defendants are not responsible for a change in the bed or current of the stream, brought about by natural or providential causes, nor were they bound, after the change had taken place, to restore the stream to, and keep it within, its original channel. (*Jones* v. *Turner*, 46 *Barb.* 527.) 6. If from any cause, particularly a natural cause, the stream, leaving its natural channel, overflowed or encroached upon the lands of the defendants, they had the right to protect their land by the erection of artificial structures on the line of the original bank, even though the erection of such structure, owing to the operation of natural causes below, tended to throw the water upon the lands of another. (*Angell on Water Courses*, §§ 332, 334.) It was the right of the plaintiff to build against such overflowing waters. (29 *N. Y.* 459.)

II. The defendant Nancy Drew being the sole owner of the premises in question, an action in equity to abate a nuisance or to enjoin a discontinuance thereof on such premises, will not lie against the defendants John and Clark Drew. The claim of damages is a mere incident of the action, and unless the action can be maintained for that which constitutes its gist and gravamen, it should be dismissed. Mere employees, such as mechanics and laborers, who are employed in the erection of a nuisance, are not liable to such an action; the reason being, that having no proprietary interest in, or control over it, they would be guilty of a trespass as against the owner, should they undertake to abate it; and the law never compels a party to commit a trespass, or protects him in so doing. We submit that the motion for a dismissal of the complaint as against Clark and John Drew, was improperly denied.

Wallace *v.* Drew.

(*Angell on Water Courses*, §§ 402, 404.) They are required by the judgment to remove that in which they have no right or control over.

III. The defendant Nancy Drew, wife of the defendant John Drew, not having participated in the erection or continuance of the alleged nuisance, no authority to erect or continue said nuisance is implied by reason of her interest in the premises, and no cause of action exists against her herein, either jointly or severally. There is no evidence that she had anything to do with the erection of the nuisance, or was ever notified to remove it. This renders the proof insufficient as to her. (*Hubbard* v. *Russell*, 24 *Barb.* 404.)

IV. The rule of damages adopted by the referee is erroneous. The witness is asked the value of the whole farm before and after alleged damage, while there is no pretense that more than an acre or so is injured. There is no foundation laid by showing such an injury as affected the value of the entire farm.

The amount of damages allowed is excessive, and was evidently based upon the wild guesswork of the witnesses Porter and Smith, which was erroneous. The damages should have been assessed on the basis of the facts proven. (*Newman* v. *Wells*, 12 *Wend.* 161.)

*Henderson & Wentworth*, for the respondents.

I. The first, second and third findings of fact are not excepted to or controverted. The fourth, fifth, sixth and seventh findings of fact, which are excepted to, are abundantly sustained by the evidence. Upon these questions of fact we only ask the court to read the evidence in connection with the map showing the location of the stream, situation of the premises, and the several acts of the defendants in obstructing the stream and thereby causing the water to flow from the defendants' lands on to the plaintiff's lands. The facts found by the referee are not only abundantly proved, but they are not controverted by the defendants.

Wallace *v.* Drew.

II. The referee did not err in his conclusions of law contained in his report. 1. The referee decides that the plaintiff is entitled to recover $500 damages and one year's interest thereon, $35, amounting to $535. The evidence on the question of damages fully sustains this finding. The real injury to the plaintiff's farm was done in the summer of 1869, and prior thereto. 2. The defendants except to this finding upon the question of damages as a whole. They do not specifically except to the allowance of interest. Hence the finding as to the $500 damages being correct, and the finding as to the interest being a separate and distinct finding, and not specifically excepted to, the general exception does not raise the question as to the correctness of the allowance of interest. (20 *N. Y.* 463, 469, 470.) 3. The interest was properly allowed as part of the damages. (5 *Cowen,* 587. *Spencer, senator,* 608 *to* 614.) 4. If the interest was not properly allowed, the plaintiff may be required to abate it by stipulation, and the error thus cured without a new trial. 5. The referee, in his second legal conclusion, decides that the plaintiff is entitled to judgment enjoining the defendants from the commission of the acts complained of. The plaintiff is obviously, from the whole case, entitled to this relief. The current of the stream is swift; its floods and freshets are its certain natural characteristics and condition; its banks and bed are composed of loose gravelly soil; the amount and value of the plaintiff's property imperilled by its obstruction is large; the continued and serious injury that the plaintiff's property is absolutely certain to sustain if the defendants be permitted to obstruct the natural flow of the water on their land, makes this decision the only real and substantial protection the plaintiff can have against the wrongful acts of the defendants. If the defendants undertake to protect their own land by placing fortifications in the channel or on the bank of the stream, whether that channel be the original channel or some new

channel which the stream has made for itself, on their land, they are bound to see to it that these fortifications and obstructions do not cause the water to flow from their lands on to the plaintiff's lands. (*Angell on Water Courses*, §§ 333, 334, 336. *Jones* v. *Turner*, 46 *Barb.* 527. 56 *id.* 480.) The facts that all the water in the stream in question would have flowed westerly across the defendants' farm, into the large stream on the west end of the farm, and that none of it would have flowed on to the plaintiff's farm if the defendants had not obstructed it, are not controverted by the evidence.

III. The referee did not err in his several rulings on the trial. The third ruling was as to the value of the plaintiff's meadow lot, where the hole was made by the water. The evidence called for by this question did not tend to establish an improper measure of damages. The measure of damages is the depreciation in the value of the plaintiff's premises occasioned by the injury resulting from the defendants' acts. (51 *Barb.* 94. 24 *id.* 273.) The witness had testified that he knew the value of the plaintiff's land; had seen where the water cut the plaintiff's land; that the plaintiff's farm was worth $100 per acre before the water damaged it; that there are sixty acres of it; that he knew the meadow lot where the hole was made by the water. The question called for the value of the land with the injuries complained of, and tended to establish the correct measure of damages, and for that purpose was proper. No other objection was pointed out to the referee.

IV. The referee did not err in refusing to dismiss the complaint, as to either defendant. Nancy Drew has owned and lived on the farm for the last ten years. John and Clark Drew, her husband and son, lived on the farm during that time, and carried it on, with the aid of some younger children. They were all living on the farm at the commencement of this action. The defendants all aided, assisted and countenanced the erection and main-

Wallace *v.* Drew.

tenance of the obstructions complained of. It is submitted that the grounds stated on the motion to dismiss the complaint, as to each defendant, have no force or application to the facts of the case, and are wholly untenable.

*By the Court,* JOHNSON, J.   It is well settled, that every person through whose land a stream of water flows, may construct embankments and other guards on the bank to prevent the stream washing the bank away and overflowing and injuring his land.   But in doing this, he must be careful so to construct them as not to throw the water upon his neighbor's lands, where it would not otherwise go, in ordinary floods.   If he does, he will be liable for the injury.   This is upon the familiar principle that a person must so use his own as not to injure another.   But this rule does not apply to floods altogether extraordinary and unusual.   (*Angell on Water Courses,* § 334.)

The referee has found, and I think upon evidence which warrants such finding, that the banks and erections made by the defendants to guard the bank and prevent the waters of the stream from injuring their own premises, have caused the waters of the creek to flow northward and upon the plaintiff's lands, where they did not belong, and were not accustomed to flow, and where they would not have gone but for these guards and erections.   Were this the only question in the case, I should be unable to find any reason for interfering with the judgment.

But the damages given by the referee seem exceedingly large, in any view of the facts.   Only about one eighth of an acre of land was washed out by the action of the water, and this, one witness testifies, injured the whole farm $40 per acre, and reduced its value to that extent.   Another witness testifies that in his opinion the premises were injured $50 per acre.   This is the testimony as to the damage, on the plaintiff's side.   Neither witness gives any grounds or reasons for this extraordinary estimate.   On

the other side five witnesses are examined in regard to the damage, and they put the entire damage at from $30 to $80. This is a wide difference, and as it was all a matter of opinion, care should be taken to see that the damages are not excessive. Without some explanation, it seems incredible that the injury to the other lands could have been so great.

But there is a more serious difficulty on this question of damages. It appears, without any dispute or contradiction, that all the water which flowed upon the plaintiff's premises, on that occasion, did not come from the branch of the creek which flowed through the defendants' lands, or by means of their guards and erections. Just above the defendants' premises, the stream divides into two branches, the south branch flowing through the defendants' lands, and the north branch through the lands of one Milks, which adjoin the plaintiff's lands on the south. The waters from the defendants' branch of this creek could not possibly get to the plaintiff's land without running nearly at right angles across the north branch of this creek. It appears that the water runs in these two branches in about equal proportions, and that some years ago a dike was put in above Jones' bridge in order to effect an equal division of the volume of water in the two streams. The water, when it left the defendants' premises, on the occasion of the injury complained of, ran north down the Little Valley road, which road crossed the north branch just south of the plaintiff's premises. Below this road Milks had put a tight fence entirely across this north branch, which had the effect to throw the water of this north branch upon the plaintiff, and also to prevent the water coming from the defendants' branch from passing off down that branch instead of crossing and flowing over upon the plaintiff's land. And so it appears, without any dispute, that this obstruction of Milks in the channel of the north branch, caused the waters of that branch as well

as of the defendants' branch, to flow at the same time upon the plaintiff, and both streams contributed to the injury. This Milks testifies to, and it is nowhere disputed. This being so, the defendants should not be mulcted for the whole damage. The proximate cause of the injury was at least as much, if not more, the obstruction of Milks across the north branch as the defendants' erections. Where the animals of different owners injure and destroy the property of another, the owner of each is only liable for the injury done by his animals. (*Partenheimer* v. *Van Order*, 20 *Barb.* 479. *Van Steenburgh* v. *Tobias*, 17 *Wend.* 562. *Auchmuty* v. *Ham*, 1 *Denio*, 495.) It would be manifestly unjust to make the defendants respond for the portion of the injury and damage occasioned by the wrongful act of Milks, who was in no way connected with them in act or interest, and whose obstruction was wholly upon his own land, and upon another stream.

I am of the opinion, therefore, that the judgment should be reversed, and a new trial ordered, with costs to abide the event, and the order of reference vacated.

New trial granted.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, March 6, 1871. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]