Stewart v. Schneider.

R. A. STEWART, PLAINTIFF IN ERROR, V. RUDOLPH
SCHNEIDER, DEFENDANT IN ERROR.

1.  Water Course: OBSTRUCTIONS: OVERFLOW. A and B were
    owners of adjoining lands over which the waters of Spring
    branch flowed without any definite channel. A, to protect his
    land against such flow, dug a ditch along the line between him-
    self and B, and raised an embankment along said ditch, and
    thereby obstructed the natural flow of water from the land o.'
    B. B thereupon enjoined A from keeping up said embankment,
    and a decree by stipulation was entered whereby A was required
    to make and keep three openings, each at least one rod in.
    width in such embankment. Afterwards the lands of B were
    overflowed by the waters of Spring branch being thrown back
    upon them. A verdict having been returned in favor of B for
    $275 damages, Held, First, that if the overflow was caused by
    A closing the openings in the embankment in question, he was
    liable for the damages resulting therefrom. Second, there being
    a direct conflict in the testimony as to the character of the em-
    bankment and the cause of the injury, the case was one proper
    to submit to a jury.

2.  Instructions set out in the opinion, Held, Properly given, and
    certain instructions asked properly refused.

ERROR to the district court for Nemaha county. Tried
below before POUND, J.

*J. R. Webster* and *W. E. Stewart,* for plaintiff in error

1. But for the stipulation and decree in the former action curtailing the rights of the defendant Stewart's dominion, he might lawfully have done all that he is charged with doing ; that is, have diked his land against the flow of surface water. There was no course for the water that had been lost in the morass, and it is but ordinary straggling surface water that in times of rain and flood came out over these lands. These Stewart might divert. *Pyle v. Richards,* 17 Neb., 181. *Davis v. Londgreen,* 8 Neb., 43.

2. On the evidence the defendant should have had a verdict. There was no obligation of maintenance on Stewart's part, and the work, if once done, discharged him of all obligation except to permit the flow to continue. It would require proof of active interference on his part, and there was none. The verdict was therefore not sustained by sufficient evidence, and is contrary to law.

3. There was fatal error in the instructions.

Contributory negligence of the plaintiff bars recovery if by ordinary care damages might have been averted. *Omaha Horse Railway Co. v. Doolittle,* 7 Neb., 485. *Johnson v. M. P. R. R. Co.,* 18 Id., 691.

4. Where there was an attempt to perform and no complaint of the manner of performance, the case is analogous to a case of contract and like attendant circumstances, and in such case there should be a notice or demand from the one claiming performance had not been done upon the one required to perform. Till demand no action lies. *Woolner v. Hill,* 93 N. Y., 577. *Davison v. Jersey Company Associates,* 71 N. Y., 333. *Hayes v. Morrison,* 38 N. H., 90.

*W. H. Kelligar* and *J. S. Stull,* for defendant in error.

1. In this case the question involved is one of fact, and to a great extent depends upon the degree of credit to be given to the witnesses; on the point whether the three openings were made at the time and in the manner required by the stipulation and decree, there was a direct conflict between plaintiff's and defendant's witnesses, and it is evident that both cannot be true. This being the case the jury were the sole judges of their credibility and the verdict must stand. *Donovan v. Yard,* 16 Neb., 34. *High v. Merchant's Bank,* 6 Neb., 155. *O'Leary v. Iskey,* 12 Neb., 136.

2. On instructions cited. *Tootle v. Clifton,* 22 Ohio State, 254. 1 Sutherland on Damages, 245. 3 Id., 381.

MAXWELL, CH. J.

The plaintiff alleges in his petition, "that the said plaintiff was the owner of and in the actual occupation and possession of the north-east quarter of section nineteen, town four N., range fourteen east, Nemaha county, Nebraska, from about the first day of January, 1880, until about the first day of June, 1885; that the defendant was, and yet is, the owner of and in the actual occupation and possession of the east half of the southwest quarter, and the west half of the south-east quarter of section nineteen, town four N., range fourteen east, Nemaha county, Nebraska; that in the summer of 1882, the said defendant proceeded to and was building and constructing a ditch and embankment along the north line of his premises herein described in such a manner as to turn all the water arising from 'Spring Branch' away from its natural course and direction, which was over and across the defendant's premises, and precipitated said waters in and upon the premises of the plaintiff herein mentioned, to the great damage and injury of the plaintiff; that the district court of Nemaha county, Nebraska, did,

on the 2d day of September, A.D. 1882, grant and allow a temporary order of injunction, by which said order of injunction the defendant was restrained from further pursuing the building and completing of the said ditch and said embankment until such time as a final hearing on the petition praying said order of injunction might be had; that by the mutual agreement of the plaintiff and defendant in this action, they being plaintiff and defendant in the injunction proceeding begun in September, 1882, in this court, as well as by the judgment and consideration of the district court of this county at the March term thereof, A.D. 1883, the said temporary order of injunction was made final, perpetual, and mandatory, and said defendant was enjoined and restrained from further making of any ditch and embankment, such as was described in the petition in that cause, and the said defendant agreed to and was required by the said order to make three clear, clean openings in the said embankment, which was then erected and completed, each of said openings to be at least one rod wide, and said openings located as follows: one opposite and just south of the south-west corner of the plaintiff's said land mentioned in the petition in that cause, which is the same land above mentioned as having been owned by plaintiff; and one such opening to be ten rods west of the said south-west corner of said plaintiff's land, and the third said opening to be forty rods east of the said south-west corner of said plaintiff's land, and said defendant was to have the right to build ditches on his own land in the said locality, of sufficient dimensions to gather and back water towards the 'Muddy' creek, said ditches to be free from embankments, and the said three openings and ditches were ordered to be made and completed within thirty days from the date of said order and stipulation; that the said order and stipulation was dated the twentieth day of March, A.D. 1883; that the defendant wholly disregarded and in each and every par-

ticular disobeyed and violated the said stipulation and order of injunction so made perpetual by the judgment and consideration of the district court of Nemaha county, by failing, neglecting, and refusing to make the said three openings at the time required by the said order of injunction, and by continuing and completing the said ditches with embankments; that information, charging the defendant with the violation of the said injunction, having been filed in the district court of said county, the said defendant was by the judgment and consideration of the said district court at the April term thereof, A.D. 1885, upon a full hearing of all the allegations and proofs, the defendant being in court in person and by counsel, adjudged guilty of contempt of court for his violation of the said order of injunction, and was required to enter into further security for his faithful observance of the injunction; that in consequence of the failure of the defendant to obey the said injunction, and by his failure and refusal to make said three openings in said embankment at the time specified in the said order of injunction, and in consequence of his building and completing the said ditches with embankments contrary to the said order of injunction, the west eighty acres of the plaintiff's land, mentioned in this petition, was overflowed and a large body of water was backed onto the said eighty acres and there remained for about the space of fifteeen days, which said wrongs and injuries occurred in the month of June, 1884, and thereby and in consequence of the said overflow fifty acres of growing corn of the said west eighty acres were wholly ruined and destroyed, and plaintiff's premises were greatly injured and damaged; that by reason of and in consequence of the said overflow complained of above, plaintiff suffered the loss and total destruction of twelve tons of good and merchantable hay stacked on the said premises.

" Plaintiff has suffered damages in the sum of one thousand dollars, no part of which has ever been paid; plaintiff therefore prays judgment against the defendant for the

sum of one thousand dollars, together with costs of suit and for such other and further relief as justice and equity may require."

The answer is a general denial.

On the trial of the cause to a jury the following stipulation was introduced in evidence : " The said parties stipulate and agree that injunction as prayed against defendant's making any embankment such as is described in the petition be made perpetual, with a mandatory order that defendant shall make three clear and clean openings in the said embankment which he has already erected in the premises, each of said openings to be one rod wide, and shall be located as follows : one opposite and just south of the south-west corner of plaintiff's land, described in the petition, and one such opening shall be ten rods west of said south-west corner of plaintiff's said premises, and the third said opening shall be forty rods east of said south-west corner of plaintiff's said premises.

" And defendant shall have the right to make ditches on his own land, free and clear of embankments, [that will gather and back water] towards the Muddy to the extent of his line, and plaintiff will furnish right of way from defendant's line to extend such ditch to the Muddy free of charge.   The ditch from defendant's east line eastward to the Muddy shall be made by the defendant to correspond in size and depth with the ditch west of there.

" The said three openings in embankment and said ditch shall all be made by defendant within one month from this date.   Plaintiff shall pay the defendant ten dollars, and defendant shall pay all costs herein.

" Judgment, decree, and order shall be entered according to this agreement.

" March 20th, 1883.

" RUDOLPH SCHNEIDER,
"By J. H. Broady, Att'y.
"R. A. STEWART,
"By R. G. Wilkinson, Agt. and Att'y."

It appears that a decree was entered in that case in conformity to the above stipulation. The testimony covers 114 pages, and the substance of it is contained in that of the witnesses, Carnes and Stewart. A. Carnes, a witness called by the plaintiff below, testified in substance as follows :

" Lived seventeen years within one and one-fourth miles of premises; plaintiff is my son-in-law; know the ditch, which is about half a mile long ; plaintiff's west ½ of north-east ¼, 19-4-14, is north of the ditch, and Stewart and Kleckner's land south ; all the parties were resident occupiers in 1884. The ditch is about eight feet wide until it gets to Mr. Kleckner's corner. On March 20, 1883, about fifty or sixty rods of embankment was thrown up on south side of ditch, running perhaps fifty rods east of Schneider's south-west corner. On March 23 or 24, 1884, I went along the whole ditch, and there appeared to be a dense embankment; a ditch due south from the end of the east line of Schneider's west eighty, with north-end filled up, and a continuous embankment from there to the bluffs, and the water there was fifteen inches more on Schneider's land, where he lost his corn crop by reason of the water striking the embankment, except in a few places where it seeped through, than it was on Stewart's. Part of the ditch was constructed east of Schneider's south-west corner, and a part west at the time of the injunction. The ditch constructed west, after the injunction, to the bluffs, averaged eight feet (in some places it might have been ten feet) and fifteen inches deep; and the eastern part on to the Muddy, where it was perhaps all on Schneider's land, some dirt was thrown out on the north side, but the heaviest portion on the south side; depth of about six inches, until it empties; there was a considerable washout on the Muddy.

" The defendant told me he made that ditch shortly after high water in March, 1884. At the Muddy the ground is

higher than at the west, and needed no embankment to back the water; but where there was an embankment on that east part it would not be more than four inches average, and the height, width, and depth of the ditch are smaller than the eastern part, generally. The embankment raised to the bluffs after the injunction about corresponds with the embankment built before the injunction, the ditch in some places being about ten feet wide, and from a foot to (in one place) twenty-two inches before water could get over the embankment. In the latter part of June, 1884, I saw the water on Schneider's corn field, and it had more the appearance of a lake than a corn field, for some time, so that further tillage was impossible, and forty to forty-five acres was destroyed, the reason of the overflow being that Bennett's and Spring branch, instead of going in their natural course—south-east—were thrown by the embankment back over the land as I saw it. And so it will continue while these things remain, while (since the embankment) I never saw much water on the land south of it. The corn crop was good up to the overflow; after, it looked scalded and not worth cultivating; and I saw it after it was matured and would not have gathered the crop for it. Am a farmer but prefer not to state the value of that crop just before the overflow."

On cross-examination, he testified :

" When Stewart was stopped by the injunction, I don't think he had got as far east as Kleckner's ditch. The mouth of Spring branch is about twenty rods north of the ditch, and before the embankment the flow was eight to ten rods west of the corner, and the other (Bennett's) water passed on ten or twelve acres of grass land west of the farming land, in its course south-east, and then off onto Stewart's land and run south-east on Schneider's W. line. Where Bennett's water struck the grass land there was once fifteen or twenty rods of ditch, which Schneider cut one or two spades wide, but don't think that ditch was

brought within a rod of the other ditch.  I think it stopped two or three rods back—I cannot state.  It now enters Stewart's ditch.  That ditch was dug to turn the water south, where it struck the grass, and it would pass Stewart's anyway.  Schneider's ditch was east of the flow of Spring branch.  Where Spring branch comes on the Muddy, the bottom land it is nearly level, with grass and weeds in the old channel, and may be now, since Stewart's ditch, black weeds near to the center of the corn field, and may be also pools.  The strip of grass on Schneider's south-west corner is the lowest of his land.  For the last seventeen years there has never been a duck pond in the center of Schneider's corn ground, and water did not stand there before the ditch was made.  It is higher on the Muddy than west.  The land was first broken in 1873, and Schneider raised crops from 1875 to 1884, there being one entire failure in 1883, when the overflow of the Muddy took all the crops in the bottom.  A part of first crop (wheat) in 1875 was lost.  I have not known an entire failure till the embankment, when a crop was planted.  About March 20 or 24, 1884, I went to examine the embankment, because fifty acres of Schneider's land was overflowed to a depth of one foot to fifteen inches.  I went to see the situation, and not for the purpose of a lawsuit, and I have no money interest in this suit.  I was there about the latter part of June, 1884, and at other times.  When I saw it on March 24, 1884, the embankment began at Kleckner's corner, and was continuous west.  It was extended continuously to the bluffs since the injunction.  The temporary injunction was served after harvest, 1882.  I saw the first embankment in the fall of 1883, and also saw it when partly constructed in the fore part of the season.  From Stewart's east line to the Muddy, in March, 1885, the ditch was narrow and shallow, with not capacity to carry one-tenth of Spring branch, and more dirt is thrown out south and north, but that ditch would not make a high embankment.  I described

that ditch as six inches deep, but it gets deeper west. At the west, a part of the water used to run over Schneider's land, and there were several places where water could stand in winter, but it dried or run off at the time the other land was ready for the plow. The ditch does not carry off the water; it backs on a portion of Schneider's field.

"It is not the fact that there is a strip of grass land north of the ditch higher than the ditch. I saw the ditch between March 20 and 24, 1884, measured eight feet wide at many places west of Kleckner's corner, but did not measure it myself. From the time the injunction was made perpetual till March, 1884, I did not go to the ditch and embankment to examine them. I thought the matter settled. I cannot state the situation in March, 1883. In 1884 there were heavy rains, the Muddy did not overflow, and the flow I speak of came from Spring branch and the place above. The ditch was highest at the north so the water could not pass."

One Dawson, a surveyor, testified that he had taken levels of the ditch and embankment, and that an obstruction at the ditch embankment which would raise the water six inches would cause it to flow back on the land of the plaintiff below from 300 to 500 feet. He also produced a plat made by himself from his surveys.

R. A. Stewart, the defendant below, testified, in substance: "Under the stipulation and injunction I had to open the ditch from Kleckner's corner, and to make three openings, each a rod wide—one ten rods west of Schneider's south-west corner, two immediately south of the corner, and three forty rods east of that corner. This was March 20th, 1883, and I took men, plow, and scrapers, and finished the work in twenty-one or twenty-two days. I measured each of the openings a rod wide, cutting them down and clearing them out to the sod, and they have always been open since that time. In the spring of 1882, Schneider constructed a ditch, starting from the south-west corner and

running north of his line about forty rods, building an embankment with sod, fence fashion, on the east side of the ditch. I saw that ditch would throw the water out of this big hollow on my hay land, instead of spreading in its natural course over the bottom, and, to prevent that, in September following, I commenced a ditch on my north line that, with the consent of Kleckner, would carry the water into his ditch, and thence into one I had further south, and so into the Muddy. I would have made that ditch as large again as I did, but Schneider would not join in the expense. I meant to have carried that ditch to the bluffs, with an embankment to carry the water off my hay ground, but I was stopped by an injunction eighty rods from Kleckner's corner. When the work was resumed, after the stipulation and decree, in place of making a ditch on to the bluffs, which the injunction did not allow, I made a wide fire-break, to keep fire from the bottom, by scraping the sod and throwing it off on each side. From Kleckner's corner east to the Muddy, we made the ditch so as to take the flow to the creek ; near Kleckner's corner not going so deep, because there was a depression of the ground there, and at the high land at the Muddy, where the ditch emptied, sinking deeper, so as to get the flow, making it a foot deeper than the stipulation required. The first rain in the spring might bring enough water to fill the ditch. The ditch kept the water in when it was not full, and then the first rain that came it flowed along lively, and in two or three weeks at the Muddy bank it had excavated a rod wide, and eight or nine feet deeper than I dug it. This work was made mandatory' on me at the instance of Schneider, and he paid $10 towards it. By agreement with Kleckner, I stopped the mouth of his ditch to prevent a flow of water on his land, and so that it would run on to the Muddy. On Schneider's land there had been at least one large slough, or pond, where the water stood till summer evaporation, and since the

ditch no water stays, but he sues me for destroying his goose hunting ground. The south-west part of Schneider's land, where he claims his crop was destroyed, is like mine in that neighborhood, low and swampy, and little value except drained, except in a very dry year, of which we have not had very many lately. It is impossible for that ditch, as it has been since 1883, to back water on Schneider's, for, as the embankment has been, you might as well try to make a seive hold water as that. The cause of the destruction of his crop in 1884 was heavy rains. I have kept record over twenty years, and that year from June to July 31, there was forty-one days the ground in the bottom was wet from the surface, so that a man there working would sink ankle deep. Other crops besides his were as good as destroyed by overflow, some of mine included, that were on higher ground. The strip of grass land north of the ditch is 15 rods wide and 122 rods long, more or less. In the flood of 1883 the plowed land north washed, and quite large quantities of mud were permanently deposited on the grass land, and some washed south of me. That grass land used to be his lowest land, but after the wash it became highest, and water on the plowed land would have to rise six inches before it got over the grass land so as to run to the creek. I examined that grass land and I saw two old stacks of hay with the tops settled in, which was worthless. In 1885 I lost seventy tons of hay by letting it get that way. Taking his corn crop as it has been described, and at the time named, and to take the chance of its coming to anything on that land, I would put its value at $3 an acre. In the fall of 1883 Schneider expressed himself satisfied with the ditch I had made, but I said we ought to have joined together and cut a big wide opening for the freshets. He did nothing to the ditch to prevent that crop being destroyed after he put it in. At a time the ditch would not carry all the water, and the overflow would go on my land and into my ditch,

south; but the greater part of the time the ditch carried the water to the Muddy creek. I am satisfied water never, during that time, stood on his grass strip twelve hours, and north of that I think not as many days as he claims in his petition. *Cross-examined:* In the spring of 1884, in Rich's implement house, at Auburn, I did not tell Schneider I had done all I could to the ditch, and if he tried anything I was worth enough to break him up. He threatened to sue, and have me imprisoned, and I said to him if he would show me what he wanted I would do anything to keep out of court. He said I had stopped the openings, and I told him I had not. There was no embankment of the part towards the bluffs. From Schneider's south-west corner I complied with the settlement. The ditch will carry all the water it will hold west of it, but it is not large enough to hold all the water that comes to it sometimes, and the stipulation did not require that. I have done more than the stipulation required in getting the water to the Muddy. Where the depression was I leveled the ditch by the bottom and not the surface, and made the ditch deep enough to carry as much east as west. I made a nice job. I know that Schneider's grass land is higher than his plowed land, for I have been there many times along the ditch every spring and summer since I made it, and in 1884 I saw water on the plowed ground when there was none on the grass. After the flood I did not make a ditch out of the fire-break. That was only plowed and scraped once, and the loose clods scattered over my land."

The testimony of the other witnesses tends to corroborate that of Carnes and Stewart. The jury returned a verdict in favor of the plaintiff below for the sum of $275, upon which judgment was rendered. The first objection made in this court is, that the verdict is not sustained by the evidence. This objection, however, is unavailing, as the testimony is nearly equally balanced and

the case is one proper to submit to the jury to determine the facts.

Second. Objections are made to the following instructions given by the court:

"1. You are instructed that if you believe from the evidence that the plaintiff and defendant entered into the stipulation, and a decree or order of injunction was rendered thereon, which have been introduced in evidence, and if you further find from the evidence that the defendant violated the terms of said stipulation and decree, or order of injunction, as alleged in petition, and in consequence of such violation the plaintiff has been damaged as in the petition alleged, then you will find for the plaintiff.

"2. You are instructed that if you believe from the evidence that the waters in the vicinity of the plaintiff's lands, in the time of high water, collect near and overflow plaintiff's land, or a portion thereof, this will not prevent the plaintiff from recovering damages from the defendant. If you further find from the evidence that plaintiff and defendant entered into a stipulation for a decree of injunction, as claimed in the petition ; and if you also believe that defendant violated said stipulation and order of injunction, as claimed in the petition, and that in consequence of such violation a larger volume of water was forced over on plaintiff's grounds, or that a larger portion of plaintiff's land was overflowed, or that said water was held there for a longer time as the result of said violation ; if you believe from the evidence there was such a violation, and that plaintiff's crops were injured to a greater extent than they would have been from the natural overflow, you should find for the plaintiff. And if you do so find, then the measure of damages is the difference in amount between the damage he sustained from the natural overflow, and the amount of damage caused by the increased overflow of his land. If you find there was such increased overflow, and in your verdict you should endeavor to repair the actual loss, if

you find the plaintiff has sustained damages as claimed in his petition.

" 3.    If you find for the plaintiff, his measure of recovery will be the actual injury to plaintiff's corn crop and hay at the time and place they were damaged; if you find from the evidence they were damaged in consequence of the violation of said stipulation and decree by defendant, as shown by the evidence."

These instructions conform to the testimony in the case, and there was no error in giving the same.

The defendant below asked the following instructions which were refused:

" 1.    The jury are further instructed that unless you find from the evidence that there has been a violation on the part of the defendant of the order and decree of injunction mentioned in plaintiff's petition, this plaintiff cannot recover for water backed upon the lands of plaintiff by the embankment of said ditch, unless you find that said water so diverted was a living stream or water-course; and unless you so find from the evidence that said embankment has diverted and thrown back upon the lands of this plaintiff the waters of a living stream or water-course, you will find for the defendant.

" 2.    The jury are instructed that if you should find from the preponderance of the evidence that the plaintiff is entitled to damages, as claimed in his petition, on the account of the loss of his crop, then in that case you will, in ascertaining the amount of such damage so sustained by the plaintiff, be confined to the value of said crop of corn just as it stood on the ground immediately prior to the time it was alleged to have been destroyed, without any regard to its prospective value at any time thereafter.

" 3.    The jury are instructed that, in order to entitle the plaintiff to recover in this action, it must appear from the evidence that the plaintiff has used due diligence and caution in order to protect his crop from damage arising from

the injury complained of, and unless you find he has exercised ordinary care and diligence to protect said crop from injury on account of the water being backed up on it, and held there by said embankment complained of, you will find for the defendant.

"4. The jury are instructed that the plaintiff has the right to rely on the stipulation and the judgment rendered thereon, and if you find from the evidence that defendant has not complied with the requirements of said stipulation and judgment, and the plaintiff has been damaged on account of said defendant not complying with said stipulation and judgment, then you will find for the plaintiff and assess his damages at the amount he has sustained on account of said violation."

These instructions were properly refused, as such portions of them as had not previously been given were not applicable to the testimony.

The case is one proper to submit to a jury to determine from the conflicting testimony whether or not the plaintiff in error had constructed the embankment complained of without the openings required, and thereby caused the water of Spring branch to flow back upon the land of defendant in error, and destroy the crop in controversy. That the crop was destroyed all the testimony tends to show, and in our view a preponderance of the testimony sustains the verdict that the cause of the injury was the embankment erected by the plaintiff in error.

There is no error in the record, and the judgment is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.