## CARHART v. STATE.

(Supreme Court, Appellate Division, Third Department. September 18, 1906.)

1. NEGLIGENCE—SEPARATE NEGLIGENT ACTS—PROXIMATE CAUSE.

    Where an injury would have happened irrespective of defendant's negligence, defendant is not liable for any damage, though his negligence contributed thereto.

    [Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Negligence, §§ 69–74.]

2. CANALS—INJURIES FROM FLOWAGE—PROXIMATE CAUSE—LIABILITY OF STATE—MEASURE OF DAMAGES.

    Where plaintiff's land was damaged by the overflow of a water course caused in part by natural rainfall and in part by defendant's negligence in turning water from a canal and a canal feeder into the water course, the state was only liable for such part of the damage sustained as would not have resulted except for its negligence.

3. EVIDENCE—REMOTENESS.

    Where a water course overflowed in part because of natural rainfall and in part from water negligently turned into it from a canal, records showing the rainfall on the day in question in a valley seven or eight miles east of that drained by the water course were inadmissible for remoteness to prove the amount of the rainfall in the valley drained by such water course.

Appeal from Court of Claims.

Claim by Henry Carhart against the state for damages sustained by the overflow of a water course. From a judgment of the Court of Claims in favor of claimant for less than the relief demanded, he appeals. Reversed.

The claimant was in 1901 the lessee of a farm through which ran Limestone creek, which runs under the Erie Canal near Minoa, N. Y., about one mile south of and above said farm. The canal crosses said creek by means of an aqueduct in which are maintained four large waste gates, which, when open, permit large quantities of water to discharge into said Limestone creek above said premises. From said creek above the said canal was constructed a feeder known as the "Fayetteville feeder." In the sides of said feeder were four other large gates through which, when opened, quantities of water were discharged back into Limestone creek. In May and June, 1901, the water in said canal being above high-water mark, the waste gates in said feeder and the aqueduct gates in said canal were opened, causing large amounts of water to flow into Limestone creek, which, it is claimed by the claimant, caused the overflow upon his land and his damage. The Court of Claims has found that the act of the state was negligent and that the claimant is entitled to recover of the state the sum of $68.20. This amount is just one-tenth of the damage as proven by the claimant. In the opinion of the Court of Claims it was stated as found that the waters from the canal constituted one-tenth of the flow of Limestone creek. Further facts appear in the opinion.

Argued before SMITH, CHESTER, KELLOGG, and COCHRANE, JJ.

George H. Sears, for appellant.

Julius M. Mayer, Atty. Gen., and Willis H. Tennant, Deputy Atty. Gen., for the State.

SMITH, J. The claimant insists, first, that the proof shows that the injury was entirely caused by the overflow resulting from the negligent pouring of the water from the canal into the creek; and, again,

even if the creek would otherwise have overflowed, that the damage which he has sustained cannot be separated or apportioned, a part to the natural overflow and a part to the overflow caused by the negligence of the state. He therefore claims that the state in any event is liable to him for all his damages.

It is found as a fact by the Trial Court that apart from the waters which were negligently permitted to flow into the creek from the canal the high waters would have caused an overflow of Limestone creek and have caused part of the damage. This finding is not without support in the evidence. The question is then presented whether the state is liable for all the damage caused in part by the natural overflow of the creek and in part by the overflow resulting from the negligence of the state in negligently permitting the waters of the canal to flow therein.

In Ring v. City of Cohoes, 77 N. Y. 83, 33 Am. Rep. 574, the headnote in part reads:

"Where several proximate causes contribute to an accident, and each is an efficient cause, without which the accident would not have happened, it may be attributed to all or any of them; but it cannot be attributed to a cause unless without its operation the accident would not have happened."

This rule of law is approved in Ehrgott v. Mayor, 96 N. Y. 283, 48 Am. Rep. 622; Rider v. Syracuse R. T. Ry. Co., 171 N. Y. 155, 63 N. E. 836, 58 L. R A. 125. In Searles v. Manhattan Railway Company, 101 N. Y. 661, 5 N. E. 66, the rule of law is stated:

"When the fact is that the damages claimed in an action were occasioned by one of two causes, for one of which the defendant is responsible and for the other of which it is not responsible, the plaintiff must fail if his evidence does not show that the damage was produced by the former cause."

In Taylor v. City of Yonkers, 105 N. Y. 208, 11 N. E. 644, 59 Am. Rep. 492, Judge Finch in writing for the court approves the rule as stated in Ring v. City of Cohoes, supra, and further says:

"The question involved has been quite earnestly debated in other States where it arose under statutes requiring towns to keep the streets safe and convenient. In Maine and Massachusetts it is held that if, besides the defect in the way, there is also another proximate cause of the injury contributing directly to the result, for which neither of the parties is in fault, the town is not liable. [Citing cases.] These rulings are based largely upon two grounds: That the town is liable for the defect alone; and that the proportion of injury due to that cause is impossible to be ascertained. A contrary rule is held in Vermont and New Hampshire. [Citing cases.] We have already stated the rule to be in this state that the defect, even when a concurring cause, must be such that without its operation the accident would not have happened. Where the defect is the sole explanation of the injury, there is no difficulty; but where there is also another, for which no one is responsible, we have held that 'the plaintiff must fail if his evidence does not show that the damage was produced by the former cause.'"

These authorities establish the proposition that if this injury would have happened irrespective of defendant's negligence the defendant is not liable for any damage, although his negligence contributed thereto. It would seem to follow, as a necessary corollary to this proposition, that if any part of these damages would have resulted irrespective of defendant's negligence for such part of the damage

the defendant is not liable. The problem is then presented to determine what part, if any, of the damage would have resulted irrespective of the defendant's negligence. When this amount is ascertained, the difference between such amount and the damage actually suffered would seem to measure the liability of the state. It is not necessary here to hold these propositions where the injuries were caused by two proximate efficient causes, both negligent or wrongful acts. The rule of damages here stated does not seem to have been adopted by the trial court.

These conclusions seem to be in accord with the following cases: Wallace v. Drew, 59 Barb. 413; Little Schuylkill Navigation Company v. Richards Adm'r, 57 Pa. 142, 98 Am. Dec. 209. In the case last cited damages were sought by reason of the fall of a dam, with deposits of coal dirt, from different mines on the stream above the dam, worked by persons having no connection with each other and with no concert of action. It was held that they were not jointly liable for the combined results of throwing coal dirt into the river, that the tort of each was several when committed, and that they did not become jointly liable for all the consequences. Agnew, J., in criticising the decision of the court below, says:

"The doctrine of the learned judge is somewhat novel, though the case itself is new; but, if correct, is well calculated to alarm all riparian owners, who may find themselves by a slight negligence overwhelmed by others in gigantic ruin."

Again:

"True, it may be difficult to determine how much dirt came from each colliery, but the relative proportions thrown in by each may form some guide, and a jury in a case of such difficulty, caused by the party himself, would measure the injury of each with a liberal hand."

See, also, St. Louis, I. M. & S. Railway Co. v. Morris, 35 Ark. 628; Stewart v. Schneider, 22 Neb. 286, 34 N. W. 640.

In Workmen v. Great Northern Railway Company, 32 L. J. N. S. (Q. B.) 279, the Court of King's Bench at the Trinity term held where in consequence of a railway embankment the flood waters of a river were pent back and flowed over plaintiff's land, but that without the embankment the water would have reached plaintiff's land and done damage to a lesser amount, that the plaintiff could recover the difference between the damage done and what would have been the damage had not the embankment been there. Chief Justice Cockburn for the court says:

"The question is what is the damage which the plaintiff has sustained by the wrongful act of the defendant? If the water had flowed in its natural course, it would have caused £72 10s. damage to the plaintiff; and in consequence of the diversion by the defendant the plaintiff has not only sustained that amount, but £145 10s. more. In estimating the amount of damage resulting from the act of the defendant, we must take into account what would have been the damage which in the ordinary course of nature would have been occasioned by such a flood as must necessarily have occurred. Taking that to have been ascertained, I think that ought to be deducted from the total amount of damages."

Whitman, J., says:

"The damage is primarily occasioned by the flood. If no works had been erected by the defendants, the flood would have done damage to the amount of £72 10s. In consequence of the wrongful act of the defendant, the damage which the flood has done to the plaintiff is increased by the amount of £145 10s., and that is therefore the measure of damages."

In Nitro-Phosphate Company v. London and St. Katharine Dock Company, 1 English Ruling Cases, 283–288, this case is approved, and it was held that the proportionate part of the damage due to defendant's wrong must be ascertained as accurately as possible. In O'Donnell v. Syracuse, 184 N. Y. 1, 76 N. E. 738, Judge Gray, in reversing the judgment of the Appellate Division, says:

"The municipality was chargeable only with that much of the damage which was caused by its wrongful acts, and, if the damage was incapable of separation and the proportions of liability could not be established, that fact affords no reason for holding the city responsible for the tortious acts of others."

It may be impossible to reconcile the cases upon this vexed question. The tendency of modern judicial decison, however, is toward an endeavor to make a party answerable only for the damage caused by its own negligence. On the other hand, the court will be slow to deny relief to the plaintiff by reason of the difficulty in establishing the exact proportion of damage caused by a defendant's wrongful or tortious act. The jury will be allowed much license in estimating the extent of damages attributable thereto. They must apportion the damage as best they can.

The damages found by the Trial Court seem to be based upon incompetent evidence. The amount of water flowing through Limestone creek at that time is based entirely upon the evidence of experts who have founded their opinons upon hearsay and incompetent testimony. The records which were put in evidence and upon which these opinions were founded were properly stated by the presiding judge of the court below to have been insufficiently authenticated. The records were of the amount of water which fell into the Chittenango creek valley, a valley seven or eight miles east of the valley of Limestone creek, and the deduction as to the amount of water flowing through Limestone creek was founded purely upon a comparison of the area of the watershed of Limestone creek with that of Chittenango creek. This in our judgment is too remote upon which can be founded any determination as to the amount of water which passed down Limestone creek upon that day. The evidence shows that these waters were caused by various showers, and it is a matter of common knowledge that these showers are many times so far local that a large amount of water will fall in one valley and a much lesser amount in another valley contiguous thereto. This fact presents too much uncertainty for the comparison made by the state's witnesses, upon which the judgment was based.

The judgment is therefore reversed, and a new trial ordered, with costs. All concur.