(61 Misc. Rep. 13.)

CARHART v. STATE.

(Court of Claims of New York. October, 1908.)

CANALS (§ 18*)—CLAIMS AGAINST STATE—DAMAGES FROM OVERFLOW.
　　Claimant's lands were overflowed by water discharged from a canal belonging to the state into a creek flowing through claimant's lands. Held, that the state was liable for the damages, though the creek was swollen by heavy rains, where it is not shown that without the discharge from a canal the claimant's lands would have been overflowed.
　　[Ed. Note.—For other cases, see Canals, Dec. Dig. § 18.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Prosecution by Henry A. Carhart of a claim against the State of New York for overflowing lands. Judgment for claimant.

See, also, 115 App. Div. 1, 100 N. Y. Supp. 499.

George H. Sears, for claimant.

William S. Jackson, Atty. Gen., and George P. Decker, Deputy Atty. ·Gen., for the State.

RODENBECK, J. The claimant in this case was a tenant, in 1902, ·on a farm situated in the town of Manlius, on Limestone creek, about half a ·mile north of the Erie Canal. Limestone creek passes underneath the canal, which is carried over the creek by means of an aque-·duct. There are three gates in the aqueduct for discharging the surplus water of the canal into the creek. Connected with the canal and the creek is a canal feeder, which feeds the canal near the aqueduct. The feeder is about half a mile long. It is connected with the creek by means of gates; the water of the creek being held back by a dam. There are also four gates in the feeder for the purpose of discharging the surplus water of the feeder into the creek. These gates are situat-·ed about one-quarter of a mile south of the aqueduct and are similar ·to those in the aqueduct. There are also a wasteweir in the feeder and ·a spillway in the aqueduct, which allow water to escape into the creek from the canal and feeder.

The damages are alleged to have occurred July 21, 1902. It had ·rained, on the 19th and 20th of that month, a total of 1.43 inches of water on the watershed of Limestone creek, as measured at Fayette-·ville by the weather observer. The claimant noticed the water rising in the creek and overflowing its banks north of the canal, and with ·two or three of his neighbors went to the aqueduct and feeder to see whether any water was coming from the canal. He says:

"On the morning of July 21st, about 9 o'clock, I saw the creek coming out of the bank, and I and some others went up, and we found one gate open in the ·aqueduct and three gates open in the wasteweir."

He also says that water was running over the spillway of the aque-·duct into the creek. He walked up to the aqueduct· and wasteweir about 10 o'clock and remained about half an hour, then went to the south end of the feeder and found the gates closed there. North of ·the canal, he says, the water in Limestone creek was in its channel, ·and at 9 o'clock south of the canal the water was going over the banks ·of the creek pretty freely, and increased until about 4 o'clock in the ·afternoon. The water covered about 43 or 44 acres of his land. There ·were some high places that it did not touch, and in some places it was ·deeper than in others; but· it covered the meadows and low places from six inches to a foot. He says:

"It remained that day and the next day. About 2 or 3 o'clock we noticed it going down. Of course, some places it didn't go off in a week, where it set-·tled back."

It was two or three days before the water was all off. The creek ·was within its banks above the wasteweir—that is, south of the canal— ·and the claimant testified that, on other occasions, when conditions ·south of the aqueduct in the creek were about the same as they ·were on

July 21, 1902, when the damages in this case are alleged to have occurred, there was no flooding of his land south of the canal:

"Q. Now, have you been up there (meaning south of the canal) on other occasions when the banks were at the same height or nearly the same height? A. Yes, sir. Q. And when the gates in the aqueduct and wasteweir were not open? Mr. Decker: Objected to as leading. Q. Did you know whether on one of these occasions, you speak of it as being the same, the west gates in the feeder and the aqueduct were not open? A. Yes, sir. Q. What was the condition of the creek by your premises at that time? A. Within its banks."

He says the gates of the aqueduct were closed on the evening of the day that the damage occurred. It appears that the water in the canal was from six to eight inches above normal level. It appears from the testimony of a former state employé that, on one occasion in July, 1897, he opened three gates in the aqueduct, while the banks of the creek were full, and the water from the canal overflowed the creek in about three hours; but the same witness testified that he had seen the flats overflowed in summer when the gates were open. Another witness, however, for the claimant, testified:

"I have never known in the nine years when I was on the Stern's farm (which is north of the canal not far from the Carhart place) the creek to overflow the banks when the gates weren't open. Q. You mean in cropping season? A. When the gates weren't open, but when they are open they can overflow at any time. They can overflow the Stern's farm in an hour and a half after they open the gates at any time, because we are right under it, and we get it before anybody does."

Another witness testified: That he crossed the creek about 5 o'clock in the morning, and that, at that time, the creek was "a little high"; that he walked across it with rubber boots; that he observed the creek again about 9 o'clock; that at that time the water was all over the flats around the barn; that when he first crossed the creek there were no gates open, but that when the water began to overflow he went to the aqueduct and found one gate open in the aqueduct and the water running over the spillway.

Upon this evidence the claimant is entitled to recover the full amount of the damages established by him. It does not appear that there would have been any overflow of the creek, had the state not interfered. In the former case of Carhart v. State, 115 App. Div. 1, 100 N. Y. Supp. 499, the evidence showed that the run off due to the rainfall exceeded the capacity of the creek, from which the court was justified in finding that the claimant's premises would have been flooded irrespective of any negligence on the part of the state, and that the state had not caused all of the damage; but, in this case, while there is evidence as to the extent of the rainfall at Fayetteville, there is no proof as to what the run off was in the creek due to this cause. On the other hand, it appears that the amount of water discharged by the state into the creek was 367 cubic feet per second, while the capacity of the creek opposite the Carhart place was 480 cubic feet per second. There was evidently sufficient water in the creek to cause an overflow at the time that the gates in the aqueduct and feeder were opened, when supplemented by water from the canal. The witness Brown testified that, when he saw the creek at 5 o'clock in the morning, it was within its banks, but

that it began to overflow about 9 o'clock; and there is abundant proof that at that time there was one gate open in the aqueduct and three gates in the feeder. The court is not at liberty to reduce the amount of damages established by the claimant, unless it appears that the damages would have occurred, or some part of them would have occurred, irrespective of the negligence of the state.

In Crowley v. State, 112 App. Div. 872, 98 N. Y. Supp. 1094, an award made by this court was reversed, on the ground that the court had no power to make an award for an amount less than the damages proven, on the theory that the injury was caused partly by heavy rains, in the absence of any evidence of any damage caused by rains. In Ostrander v. State, 112 App. Div. 875, 98 N. Y. Supp. 1061, an award of this court which was less than the amount of damages proven was reversed, on the ground that it did not appear that there was any accu-mulation of rain on the premises of claimant, or that the rain would have caused him any damage whatever. The case of Carhart v. State, 115 App. Div. 1, 100 N. Y. Supp. 499, was a claim by the present claimant for damages resulting from the flooding of Limestone creek for the year 1901, due to the discharge of surplus water into the creek. In that case the court awarded less than the amount actually established on the trial as the amount of damages suffered by the claimant. In that case, upon the trial, it was insisted on the part of the claimant that the state was liable for all of the damages done, and on behalf of the state that the state was liable for none of the damages. The rule for determining the amount of damages, in a case where negligence on the part of the state is established, and there are heavy rains which unite to cause the damages, was litigated, and Mr. Justice Smith, writing the opinion of the Appellate Division, after reviewing the cases upon the subject, said:

"These authorities establish the proposition that, if this injury would have happened irrespective of defendant's negligence, the defendant is not liable for any damage, although its negligence contributed thereto. It would seem to follow, as a necessary corollary to this proposition, that if any part of these damages would have resulted, irrespective of defendant's negligence, for such part of the damage the defendant is not liable. The problem is then presented to determine what part, if any, of the damage would have resulted irrespective of the defendant's negligence. When this amount is ascertained, the difference between such amount and the damage actually suffered would seem to measure the liability of the state." Page 4 of 115 App. Div., page 500 of 100 N. Y. Supp.

We are relieved in this case from the necessity of attempting to apportion the amount of damages actually due to the negligence of the state, irrespective of those produced by other causes, since there is no evidence upon which we can find that any damages "would have resulted irrespective of the defendant's negligence." Since the decision of the Carhart Case, similar cases of Acer v. State, 124 App. Div. 915, 108 N. Y. Supp. 1125, Post v. State, 124 App. Div. 916, 108 N. Y. Supp. 1145, and Ostrander v. State, 126 App. Div. 938, 110 N. Y. Supp. 1139, have been affirmed by the Appellate Division, in all of which cases there was an attempt to award the actual amount of damages done through the negligence of the state, and the award in each case was considerably less than the total amount of damages suffered. The case

of Ostrander v. State was appealed to the Court of Appeals and was affirmed (192 N. Y. 415, 85 N. E. 668); Judge Hiscock writing the opinion.

Under these authorities, the claimant is entitled to recover, and, as there is no proof that any damages would have resulted to him irrespective of the negligence of the state, he is entitled to recover the full amount of the damages established, to wit, $507, with interest from the date of the entry of the judgment.

Judgment for claimant.