HOLLAND–DALE GARDEN COMPANY, INC., Claimant, *v.* STATE OF NEW YORK.

Claim No. 14213.

(State of New York, Court of Claims, October, 1920.)

Waters and water courses — flooding of lands — where there are several contributing causes state only liable for its share of the damages.

Where through negligence the state occasions part of a flooding of the lands of another and a part is caused by natural causes, the state is only liable for its share of the damages.

Where it is difficult to establish the exact amount of the damages caused by each of several contributing causes, for only one of which the state is liable, great latitude is to be allowed in estimating the amount of damages attributable to each.

Where there were three contributing causes to the flooding of claimant's land, for one of which the state alone is liable, each cause contributing equally to the flooding, the state is liable for only one-third of the damages sustained by the flooding and the destruction of the crops, and an award therefor will be allowed.

Court of Claims, October, 1920.        [Vol. 113.

CLAIM for damages resulting from overflow of Erie canal.

Edson W. Hamm (Arthur J. Blauvelt and Clarence J. Foertch, of counsel), for claimant.

John H. Clogston, deputy attorney-general, for state of New York.

MORSCHAUSER, J.  The claimant filed a claim against the state of New York, alleging that certain of its crops were destroyed from September 13 to 25, 1915, caused by waters from an overflow and leakage of the Erie canal, and also by the backing up of waters which caused an overflow of Crane creek which the claimant alleges was produced by the state interfering with the natural flow of Crane creek.  The claimant's land is situate in the town of Mentz, Cayuga county, N. Y., and consists of about 180 acres of land.  The portion affected by the overflow was about 30 acres of 72 acres lying adjacent to the Erie canal.  At the time of the flooding of the claimant's land it had growing upon it: 5 acres of double rows of celery (40,680 plants); 17 acres of single rows of celery (2,072 dozens); 6 acres of lettuce; 300 bushels of potatoes; 6,000 bushels of onions.

There were damaged by the flood 2,600 bushels of onions.

Claimant's land and garden were located about midway between Port Byron and Montezuma village on the northeasterly side of the Erie canal.  The lands of the claimant were formerly marsh land and had been reclaimed.  The upper soil of this land consisted of about three feet of muck, and underneath that the soil was of clay.  The claimant had constructed ditches through its garden land for the pur-

pose of carrying off the waters which came from the usual rainfalls. The waters that so fell were carried off by the ditches constructed by the claimant and were led into a large ditch constructed and maintained by the state; and this ditch empties its waters into Crane brook which ran in a westerly direction and was located below the claimant's land. A tributary to Crane brook called Salt creek emptied into Crane brook somewhat westerly from the lands of the claimant. Crane brook emptied into the Seneca river located west of the lands of claimant.

Claimant's contention upon the trial was that its lands were flooded and its crops destroyed through the negligence of the state, the claim being that the natural and ordinary flow of the waters in Crane creek was dammed by the state's building and constructing at its mouth a sill with a wale put along the top of sheet piling, and also by permitting the canal in the vicinity of claimant's land to overflow which was caused by the state's permitting an excess quantity of water to be emptied into the level of the canal at the place where it overflowed which was near claimant's land.

On September 12, 1915, in the night time there was a heavy and unusual rainstorm, and great quantities of water fell in and about the surrounding country and upon claimant's land, all of the witnesses called by either the claimant or the state agreeing that this rainfall was an unusually heavy one, some of the witnesses describing it as a cloud burst, and being one of the most severe storms that had taken place in that country within the memory of many of the witnesses. Shortly previous to September 12, 1915, there had been several heavy rains in the vicinity of claimant's land. and the ground in that neighborhood was generally filled with water. The surface of claim-

ant's land being muck land, and there being a clay soil underneath, the land did not absorb the water as readily nor as rapidly as is usual with a leachy or sandy soil. The premises of the claimant were somewhat lower than the land lying north and east of it. On the morning of September 12, 1915, the heavy rains filled the ditches on claimant's land and also the ditch constructed by the state which led into Crane creek; and the ditches did not carry the water off as fast as it fell upon the soil. The claimant's premises were flooded and part of the crops in its garden destroyed.

We think that the flooding of the land of the claimant was brought about by the backing up of Crane creek, the overflow from the Erie canal, and the water flowing in and upon claimant's land from the surrounding country, the claimant's land being somewhat lower.

The construction of the sill in Crane creek at its mouth by the state was for the purpose of preventing the silt from the bottom of Crane creek being washed into the barge canal by the force of the water. The structure placed there by the state was not above the level of the bottom of the creek. The elevation of the bottom of the barge canal was three or four feet lower than the bottom of Crane creek. The sill was placed there by the state to prevent the waters of Crane creek flowing into the Seneca river depositing material in the barge canal. The structure placed at the mouth of this creek by the state was built on a level with the bottom of the creek, and did not, we believe, in any way interfere with the natural flow of the waters in Crane creek as their flow existed prior to the building of this structure by the state, and did not in any way cause the waters to back in Crane creek. Crane creek is described by some of the

witnesses as a wild stream; and it appears whenever there is a rain that much water that falls upon the surrounding country finally flows and empties into Crane creek. When the unusually heavy rainfalls of September 12, 1915, occurred the creek was not of sufficient size to carry off the water, and much of it flooded back upon the surrounding land and was partly the cause of the flooding of the claimant's garden.

We think the state was negligent in permitting the Erie canal to overflow, and to the extent of the damage caused thereby the state is liable.

There were, as we believe, three causes which produced the flood upon the claimant's land: one being the overflow by the Erie canal; another being the backing up of the waters of Crane creek; and the other being the large volume of water which naturally flowed in and upon the claimant's land by reason of the lands surrounding the claimant's premises being somewhat higher than the claimant's land. We believe that each of these conditions contributed to the damage to the claimant and the flooding of its land. The state was in no way responsible for the waters that flowed upon claimant's land from the surrounding country; and the state was in no way responsible for the overflowing of Crane creek; but it was negligent in permitting its canal to overflow. All of these conditions caused the flooding of claimant's land and the destruction of its crops.

Where damages resulting from flooding occasioned by water which the state without right turns upon the land of another are also due in part to natural overflow, the state is only liable for such portion of the damage as it actually occasioned; and where, through negligence, the state occasions part of a flooding, and a part is caused by natural causes, the state

is only liable for its share of the damage. Under these circumstances, the state is not liable for the whole damage but only for the part thereof caused by the negligence of its employees; and when it is difficult to establish the exact amount of damages caused by each of two contributing causes, for only one of which the defendant is liable, great latitude is allowed in estimating the amount of damages attributable to each. *Cooper* v. *State*, 103 Misc. Rep. 209; *Carhart* v. *State*, 115 App. Div. 1; *Ostrander* v. *State*, 112 id. 875; affd., 192 N. Y. 415; *O'Donnell* v. *City of Syracuse*, 184 id. 1; *Spencer* v. *State*, 135 id. 619.

The claimant upon the trial established that there were destroyed twenty-two acres of celery, five acres of double rows and seventeen acres of single rows. The five acres that were double rows had 45 rows of 904 plants in each row, making 40,680 plants per acre, and a total of 203,400 plants. The seventeen acres, or single rows, contained in all 422,688 plants. There were six acres of lettuce, or 560 rows of 660 heads to each, making a total of 36,960 heads, less 9,240 heads for poor leaves, making a net of 27,720 heads on the six acres. There were 300 bushels of potatoes, 6,000 bushels of onions totally destroyed, and there were 2,600 bushels of onions that were damaged, and the extra labor of transportation and work of attempting to save the crop and so forth.

The total amount of damages that the claimant sustained by reason of the flooding of its lands was $18,795. There was no evidence offered on the part of the state contradicting this proof; and we are, under the circumstances, obligated to find that the damage sustained by the claimant was the sum of $18,795.

As there were three contributing causes to the flooding of this land, and as the state is only liable, as

we find, for one of these causes, each cause contributing substantially equally to the flooding, the state, under the authorities above cited, is liable only for one-third of the damages sustained which amounts to the sum of $6,265.

Therefore, the sum of $6,265 is awarded to the claimant.

WEBB, J., concurs.

Judgment accordingly.