### ADKINSON v. STATE.

(Supreme Court, Appellate Division, Third Department. June 27, 1906.)

CANALS—OVERFLOW—FLOWAGE OF LANDS.

Where a gatekeeper on the Erie Canal negligently and unnecessarily raised the gates to such an extent that the banks of the stream used to carry the overflow water from the canal were insufficient to hold the same, and the water flooded plaintiff's land along such stream, the state was liable for the damages caused thereby.

[Ed. Note.—For cases in point, see vol. 8, Cent. Dig. Canals, § 21.]

Appeal from Court of Claims.

Action by Hattie Adkinson against the state of New York. From a judgment of the Court of Claims in favor of plaintiff, the state appeals. Affirmed.

Argued before SMITH, CHESTER, KELLOGG, and COCHRANE, JJ.

Julius M. Mayer, Atty. Gen., and Willis H. Tennant, for the State. James Wright, for respondent.

COCHRANE, J. The respondent has been awarded a judgment for damages sustained by her by reason of an overflow of water caused by the negligence of the employés of the state. Many years ago the Erie Canal was constructed across Putnam creek, a stream of water flowing in a northerly direction in the county of Cayuga. The canal was so constructed as to receive the water of this stream as a feeder, and there were also provided six gates, which could be opened, and the water of the canal discharged through the gates into the stream on the northerly side of the canal, so that the water thus discharged would thence flow onward down the natural channel of the stream. Over the top of these gates was a spillway about 60 feet in length, the top of which was about on a level with the surface of the water of the canal at its normal depth, over which spillway the surplus water of the canal naturally found exit into the stream below. The purpose of the gates was to relieve the canal when by reason of severe storms or other emergencies the water would be in danger of overflowing the banks of the canal, or when, for any reason, it was desired to discharge water which would not naturally

escape over the spillway. The respondent occupied a farm in the years 1900 and 1901 about a quarter of a mile north of the canal on Putnam creek. At different times during the years mentioned the said gates of the canal were opened, and such large volumes of water were permitted to flow from the canal that the water overflowed the banks of the stream below and over the respondent's property, causing her damages, for which this judgment has been awarded.

The defense is that the state has acquired an easement in the water of Putnam creek, including the right to take such water, and also to discharge into the stream water from the canal. That proposition may be conceded, but it affords no justification for the damages sustained by the respondent. The flooding of her property might have been avoided by the exercise of proper care. The evidence shows that the water in the canal was carelessly permitted to rise to an abnormal height before any of the gates were opened, and that then the gates were opened, not gradually, but all at once, so as not to discharge the water from the canal gradually, but to precipitate suddenly and unnecessarily large volumes into the channel of the stream, thus unnecessarily and negligently causing the stream to overflow its banks, and occasion the damages in question. A witness who had been a gate tender at this place for nine years testified that if there was no extraordinary storm the canal could be relieved by a cautious use of the gates without flooding the banks of the stream; that if there was a heavy pressure of water three gates open would accomplish such a result. There was no extraordinary storm at the time of the flooding in question. In fact, it is established that on some occasions of flooding there was no storm in the vicinity of the respondent's farm, and on no occasion was the storm severe. The gate tender who operated the gates at the time when the damages were sustained lived about two miles from the gates. He testified:

"We would never get up to tend the gates until we noticed the water rising in the level to such an extent that it was necessary. We could watch the level, and tell the minute it was getting too high, and the time I got there—nearly two miles—that would give it half an hour longer if I had to walk, and when I got there I would generally open six paddles to start with, and probably draw them half or three-quarters of an hour, and sometimes longer. Q. When four, five, and six gates were open this stream always overflowed its banks? A. Yes, sir. My attention was called to that. It covered this farm in question as it passed along by it, and ran over its bank."

It thus appears that this judgment does not rest on the proper and necessary use of Putnam creek for the purpose of taking water therefrom, or of discharging canal water therein; but it rests on the negligence of the employés of the state in carelessly operating the canal in such a way as to suddenly and needlessly precipitate large volumes of water into the stream, thus causing it to overflow its banks, when by the exercise of proper and reasonable care the canal could have been relieved of its surplus water without causing an overflow of the stream. For such negligence the state is liable. Sipple v. State of New York, 99 N. Y. 284, 1 N. E. 892, 3 N. E. 657.

The judgment should be affirmed, with costs. All concur.