LELAND C. HURD et al., Claimants, *v.* STATE OF NEW YORK, Defendant. (Claim No. 27746.)

Court of Claims, September 27, 1946.

*Mark Heath* for claimants.

*Nathaniel L. Goldstein, Attorney-General (Harold S. Coyne* of counsel), for defendant.

LAMBIASE, J. Claimants sue to recover damages which they allege were caused by the negligence of the State of New York, its agents, servants and employees, in releasing and discharging an excessive amount of water from the Barge Canal into a stream of water known as Sandy Creek, in or near the village of Holley, New York, on or about the 3d day of March, 1943, and on days subsequent thereto, which water thus discharged, overflowed the banks of said creek and inundated part of claimants' farm located on the Ridge Road, town of Murray, Orleans County, New York, killing and destroying a number of cherry trees growing thereon. Claimants purchased the said farm consisting of 276 acres in the year 1935, and, at all times herein mentioned, were the owners thereof.

The cherry trees which were destroyed were part of an orchard which had been planted by claimants in 1941, on six acres of the land aforesaid, lying between the Ridge Road on the north and said Sandy Creek to the south. This creek curves around the south end of said orchard and comes within twenty-five feet thereof. All of the cherry trees which were destroyed were contained on one acre of said six-acre parcel.

The orchard hereinbefore referred to is located about two and one-half miles north of the New York State Barge Canal. The discharge of water from said canal in the vicinity of claimants' Ridge Road Farm is controlled by gates which are located a mile east of the lift bridge in the village of Holley, New York. When water is discharged from the canal by the lifting of said gates, the water flows from the canal into a branch of said

Sandy Creek which flows in a general northerly direction from the canal and eventually through claimants' property.

It is the contention of the claimants that on or about the 3d day of March, 1943, the State, its agents and employees, were negligent in opening the aforesaid gates and in discharging an excessive quantity of water from said canal into said creek, the water in said creek being then frozen; and that because of the waters of the canal being thus discharged upon the frozen surface of the creek, said waters overflowed the banks of said creek and flowed on to claimánts' land, destroying ninety-five trees which claimants aver were worth the sum of $475.

It is the contention of the State that claimants have failed to establish or to make out a cause of action against the State and that claimants' claim should be dismissed. The State does not question that claimants' land was inundated, and it offered no proof to contradict claimants' evidence on the question of damages. Have the claimants made out a cause of action against the State? That is the only question for us to determine. Let us examine the merits of these conflicting contentions.

It appears from the testimony of the claimants and of their witnesses: That the State, its agents, servants and employees, customarily discharged the water from that section of the Barge Canal in the vicinity of claimants' Ridge Road Farm in the Spring of each year; that this was accomplished by raising the gates to which reference has already been made herein, which gates controlled the water in the canal for a considerable distance to the east and west of the village of Holley, New York, within which area is located the farm of these claimants; that these gates, three in number, are located on the southerly side of the canal; that the water, when released from the canal through the opening of said gates, flows into a tributary or branch of Sandy Creek; that said creek flows northerly through a culvert under said canal and then flows toward said Ridge Road in a northerly direction through farm lands, eventually reaching claimants' farm, a distance of two and one-half miles north of the canal; that, as it flows through claimants' farm, its course comes within twenty-five feet of the southerly end of the cherry orchard aforesaid; that on or about the 2d or 3d day of March, 1943, the said creek started overflowing its banks and water therefrom backed up on to the south and west corners of the orchard. That the creek was frozen over at the time and that said water was flowing along, on top of and over the frozen surface thereof; that chunks of ice were carried by said overflowing water on to claimants' land, into claimants' cherry orchard and against the trees thereof destroying them; that on

the 10th day of March, 1943, two of the afore-mentioned canal gates were found to be opened; that the westerly gate was found to be opened thirty-two inches and the center gate, thirty-one inches; that the east gate was closed; that on said 10th day of March, 1943, the canal was then nearly empty of water, but some water was still coming out from under the raised gates and was being discharged into said creek; that prior to the flooding of claimants' land, the canal had not been drained of water; that the only way that the canal can be emptied of water in the vicinity of claimants' property is by the raising of said gates; that from the point where the water from canal entered the creek, northerly to claimants' farm and orchard there was only one other stream of water that fed the creek, and that the stream was a small one located on claimants' farm, and that at the time of the overflow herein, said stream was frozen solid and no water was flowing from it into said creek; that to the south from the pumping station at Holley, New York, the creek was mostly covered with ice and that there was only a slight trickle of water in the creek at that point; that about one acre of claimants' cherry orchard was inundated to the depth of about a foot; that pieces of ice were brought along with said water on to claimants' land which ice damaged and destroyed trees; that said water remained upon claimants' land for about a month and that although claimants' land was frozen the water eventually seeped through, wetting the roots of the trees, damaging and destroying a number of them. That eventually this surplus water froze, melting at last when the thaw came.

It appears further that for a number of years previous to 1943, the State had discharged water from the canal into said creek without causing it to overflow its banks and without inundating abutting property except for the year 1938, when damage was sustained by claimants by reason of discharged water from the canal overflowing the banks of said creek.

The State maintains that it has not been established herein that the water which overflowed claimants' land came from the Barge Canal. We are unable to agree with the State on this point. We are satisfied that the water which flooded claimants' cherry orchard came from the Barge Canal and that it was discharged into said creek aforesaid through the opening of said gates.

The claimants maintain that they have made out a case for the application of the doctrine of *res ipsa loquitur*. We are satisfied that such is the case.

In *Francey* v. *Rutland R. R. Co.* (222 N. Y. 482, 484–485) the court referring to the rule of *res ipsa loquitur* said (p. 484):

" It is not a complicated rule, nor is there difficulty in applying it in a given case, when the reason for its adoption is understood. The phrase usually employed to express the rule, *res ipsa loquitur* — the thing speaks for itself — may at times tend to obscure rather than to make clear what the rule means. All that is meant is that the circumstances involved in or connected with an accident are of such an unusual character as to justify, in the absence of any other evidence bearing upon the subject, the inference that the accident was due to the negligence of the one having possession or control of the article or thing which caused the injury. This inference is not drawn merely because the thing speaks for itself, but because all of the circumstances surrounding the accident are of such a character that unless an explanation be given the only fair and reasonable conclusion is that the accident was due to some omission of defendant's duty."

In *Breen* v. *N. Y. C. & H. R. R. R. Co.* (109 N. Y. 297, 300) the court said as follows: " * * * when the thing causing the injury is shown to be under the control of a defendant, and the accident is such as, in the ordinary course of business, does not happen if reasonable care is used, it does, in the absence of explanation by the defendant, afford sufficient evidence that the accident arose from want of care on its part." The foregoing statement was quoted with approval in the opinion in *Griffen* v. *Manice* (166 N. Y. 188, 194) and, also, in the opinion in *Marceau* v. *Rutland R. R. Co.* (211 N. Y. 203, 207).

The doctrine of *res ipsa loquitur* has application only in a case where the subject which produces the injury has been in the custody and under the control of the person charged with fault. (*Sandler* v. *Garrison*, 249 N. Y. 236.)

It seems to us that claimants' proof has brought their case within the legal principle of *res ipsa loquitur* as the same has been enunciated, explained and applied by our courts.

The Barge Canal is owned and operated by the State of New York. It cannot be successfully contradicted that at all times herein, the canal and particularly the gates aforesaid were in the custody, and possession, and under the exclusive control of the State, its agents and employees and that it had exclusive knowledge of the care exercised in its control and management. It was undoubtedly for the foregoing reasons that the Legislature of the State of New York in the wise exercise of its discretion enacted section 120 of the Canal Law which now reads and at all times herein mentioned read in pertinent part: " There shall be allowed and paid to every person sustaining damages from the canals or from their use or management, or resulting

or arising from the neglect or conduct of any officer of the State having charge thereof, or resulting or arising from any accident, or other matter or thing connected with the canals, the amount of such damages to be ascertained and determined by the proper action or proceedings before the court of claims, but no judgment shall be awarded by such court for such damages in any case unless the facts proved therein make out a case which would create a legal liability against the state, were the same established in evidence in a court of justice against an individual or corporation * * *."

It seems to us that the evidence adduced by claimants shows that the overflow of claimants' land would not ordinarily have happened without the neglect of some duty owed to the claimants, and that sufficient has been produced to justify an inference of negligence, and to shift the burden of explanation to the defendant.

In *Galbraith* v. *Busch* (267 N. Y. 230, 233, 234) the court said: " The doctrine of *res ipsa loquitur* is not an arbitrary rule. It is rather a common-sense appraisal of the probative value of circumstantial evidence. It requires evidence which shows at least probability that a particular accident could not have occurred without legal wrong by the defendant. To negative every possibility that the accident occurred in some extraordinary manner which would exculpate the defendant is often impossible. In the administration of the law we must be satisfied with proof which leads to a conclusion with probable certainty where absolute logical certainty is impossible. * * * So where the instrumentality which produced an injury is within the exclusive possession and control of the person charged with negligence, and such person has exclusive knowledge of the care exercised in the control and management of that instrumentality, evidence of circumstances which show that the accident would not ordinarily have occurred without neglect of some duty owed to the plaintiff is sufficient to justify an inference of negligence and to shift the burden of explanation to the defendant. (*Slater* v. *Barnes,* 241 N. Y. 284.) "

No such explanation was forthcoming from the State. Claimants' case on the record remains uncontroverted. The facts, therefore, are not greatly in dispute, although there is a wide difference between the parties as to the inferences and conclusions to be drawn therefrom.

The law is well settled in cases of this kind. The evidence offered on behalf of the claimants is sufficient, uncontradicted and unexplained, to warrant a finding by us that the State is liable in damages. Upon the record herein, therefore, claim-

ants are entitled to recover the full amount of damages established by them and as set forth by us in the accompanying decision. (*Sipple* v. *State*, 99 N. Y. 284; *Carhart* v. *State of New York*, 61 Misc. 13; *Carhart* v. *State of New York*, 115 App. Div. 1; *Adkinson* v. *State of New York*, 114 App. Div. 249, affd. 187 N. Y. 566; *Mohawk Carpet Mills* v. *State of New York*, 267 App. Div. 707; *Nightingale* v. *State of New York*, 265 App. Div. 690; *Nightingale* v. *State*, 46 N. Y. S. 2d 525, affd. 269 App. Div. 725.)

We find no merit to the contention of the State that it had a right by prescription to flood claimants' land. As was said by the court in *Adkinson* v. *State of New York* (114 App. Div. 249, 250–251, *supra*): " The defense is that the State has acquired an easement in the water of Putnam creek, including the right to take such water, and also to discharge into the stream water from the canal. That proposition may be conceded, but it affords no justification for the damages sustained by the respondent. The flooding of her property might have been avoided by the exercise of proper care. The evidence shows that the water in the canal was carelessly permitted to rise to an abnormal height before any of the gates were opened, and that then the gates were opened, not gradually, but all at once, so as not to discharge the water from the canal gradually, but to precipitate suddenly and unnecessarily large volumes into the channel of the stream, thus unnecessarily and negligently causing the stream to overflow its banks and occasion the damages in question. * * * It thus appears that this judgment does not rest on the proper and necessary use of Putnam creek for the purpose of taking water therefrom or of discharging canal water therein. But it rests on the negligence of the employees of the State in carelessly operating the canal in such a way as to suddenly and needlessly precipitate large volumes of water into the stream, thus causing it to overflow its banks, when by the exercise of proper and reasonable care the canal could have been relieved of its surplus water without causing an overflow of the stream. For such negligence the State is liable. (*Sipple* v. *State of New York*, 99 N. Y. 284.) "

The motions made by the State at the end of claimants' case and at the end of the entire case for a dismissal of claimants' claim upon all the grounds mentioned in said motions are respectively denied with an exception reserved to the State in each instance.

We are therefore making an award to the claimants in accordance with the accompanying decision.

Let judgment be entered accordingly.